UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MELVIN L. MOBLEY, III,<br>TDCJ # 01502681, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3:18-0039 |
| | § | |
| JOSEPH DAVIS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Melvin L. Mobley III, an inmate at the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), proceeds *pro se* and *in forma pauperis*. Mobley alleges that TDCJ officers Joseph Davis, Eric Grimes, Eric Hunter, and DeAndre Jackson subjected him to an unconstitutional use of force at Hospital Galveston on August 1, 2017. He further alleges that officers Demetria Oliver and Regina Laday were bystanders and failed to intervene.[1] Defendants Davis, Grimes, and Laday have filed a motion for summary judgment (Dkt. 66), which Defendants Hunter and Oliver have joined. *See* Dkt. 73, Dkt. 81. Plaintiff has filed multiple responsive documents and motions. *See* Dkt. 57 (declaration in opposition to summary judgment); Dkt. 58 (summary judgment response); Dkt. 60 (summary judgment response); Dkt. 68 (motion to take testimony of inmate witnesses); Dkt. 69 (motion for writ of habeas corpus ad

---

[1] Regina Laday was identified in the complaint as "Sergeant Ramirez" but changed her name since the complaint was filed (Dkt. 49, at 1 n.1).

testificandum); Dkt. 70 (motion requesting a special traverse); Dkt. 76 (motion for summons for Hunter and Jackson); Dkt. 82 (motion for entry of default against Jackson); Dkt. 93 (notice to the Court regarding Oliver); Dkt. 94 (response to Oliver's summary judgment motion); Dkt. 95 (declaration).

All pending motions are ripe for decision.[2] Having considered the pleadings, the briefing, the legal authorities, and all matters of record, the Court determines that summary judgment should be **granted** for Defendants for the reasons that follow.

## I.  BACKGROUND

Plaintiff complains in this lawsuit of Defendants' use of force against him at Hospital Galveston on August 1, 2017. Defendants claim the use of force ensued because Mobley "refused to submit to housing," was disruptive, and assaulted Lieutenant Davis (Dkt. 66, at 2). Defendants have supplied the Court with the video recording of the use of force (Dkt. 75).[3] They also submit TDCJ's Use of Force Report (Dkt. 67-1), which contains records from the investigation by TDCJ personnel and the Office of the Inspector General ("OIG"), including multiple witness statements and investigative summaries.

On August 1, 2017, Plaintiff travelled to Hospital Galveston for a follow-up

---

[2]  Defendants' summary judgment motion (Dkt. 66) supersedes the prior motion filed by Davis and Laday (Dkt. 49), which now will be denied as moot. Plaintiff filed a response (Dkt. 60) to the prior motion, before Defendants had filed the amended motion (Dkt. 66), but has had ample opportunity to respond to the amended motion. As listed above, Plaintiff has filed multiple documents since the amended motion was filed, including a response to Oliver's summary judgment motion (Dkt. 94) and a declaration (Dkt. 95) providing his factual account of relevant events.

[3]  Another video recording (Dkt. 50) submitted by Defendants contains the same files.

consultation with "ortho-hand" (Dkt. 57, at 1).[4]  Plaintiff states that he was incontinent and had an "accident" during his travel to the hospital, but that officials ignored and ridiculed his requests to clean himself (*id.*; Dkt. 95, at 1).  He claims that, as Defendants Hunter and Jackson escorted him to his medical appointment, he told both officers that, "if [he] got the chance, [he] was going to punch [Defendant] Davis in the mouth" because Davis denying him food, and that "everybody! including Def[endant] Davis knew about the threat" Plaintiff made against Davis (Dkt. 57, at 1 (emphasis original); *see* Dkt. 95, at 1).[5]  After the appointment, Plaintiff alleges that Davis made "a face like a bad smell" and was "ridiculing [Plaintiff] about his medical condition fecal incontinence" (Dkt. 57, at 2 (emphasis original); *see* Dkt. 95, at 2).  He states that he started arguing with Davis and Grimes and that, around the same time, Defendant Oliver arrived with a video camera and began recording  (Dkt. 57, at 2; Dkt. 95, at 2).

The video recording in the Court record shows Mobley in his cell talking with officers and using profanity as they remove his leg irons (Dkt. 75, at 0:00-1:00).[6] Defendants state that Mobley refused officers' orders to turn around and kneel down for removal of his leg irons (Dkt. 66, at 3).   Plaintiff describes himself as "getting combative" when Hunter ordered him to turn around (Dkt. 57, at 2; Dkt. 95, at 2).

---

[4]     Throughout this Memorandum, the Court's citations to specific pages in the record refer to the pagination of docket entries on the Court's electronic case filing ("ECF") system.

[5]     Plaintiff states repeatedly in his filings that Defendants knew he had threatened to punch Davis before the incident and appears to argue that, on that basis, Defendants could have avoided the incident (*see*, *e.g.*, Dkt. 58, at 2).

[6]     The video (Dkt. 75) submitted by Defendants contains multiple files.  Unless stated otherwise, all citations to the video recording in this Memorandum refer to the "VTS_01_1" file.

Although only Mobley's upper body is in view on the video, he appears to use his foot or leg to prevent officers from rolling the cell door closed (Dkt. 75, at 1:04). He then steps partially outside the cell (*id*. at 1:06). Defendants state that Mobley lunged at Davis and prevented him from closing the cell door (Dkt. 66, at 3).

Defendants again attempted to close the cell door. As the door started to roll closed, Mobley punched Davis with his closed left fist (Dkt. 75, at 1:08). Defendants state that the blow landed on Davis' face (Dkt. 66, at 3). *See* Dkt. 75, at VTS_01_3 (still photos show Davis with injury to mouth); Dkt. 95, at 2 (Plaintiff states that he "punched Davis in the mouth"). Several officers then entered the cell and pushed Mobley to the back wall, and the video shows one officer with a raised club (Dkt. 75, at 1:10-1:11). *See* Dkt. 95, at 2 (Plaintiff states that Hunter, Grimes, Jackson, and Davis entered his cell after he punched Davis and that Laday said, "get him!"). The video is chaotic for several seconds and Mobley is not in view.

Defendants state that, after the officers entered the cell, Mobley refused to submit to hand restraints and that they used several blows to gain control of his arms. The video captures officers administering some blows, and the audio is consistent with punches or the use of a baton, but Mobley is not in view at the time force was used (Dkt. 75, at 1:10-1:21). As the video camera stabilizes, four officers are in the cell, in addition to two female officers in the cell near the door, and Mobley apparently is on the floor near the back wall (*id*. at 1:18). Officers tell Mobley to give them his hands and to stop resisting (*id*. at 1:20-1:35). The incident lasted less than thirty seconds from the time Mobley

punched Davis.

Plaintiff alleges that Defendants intentionally obstructed the video recording (Dkt. 57, at 4-5; Dkt. 58-1, at 24 (Bates 702)). He also alleges that he was unconscious when Defendants were striking him and therefore could not have been resisting. Although Plaintiff asserts that the video "clearly shows" that he was unconscious,[7] his body is not visible on the video during the time that blows were administered. Plaintiff alleges that when he regained consciousness, he heard officers telling him to stop resisting (Dkt. 95, at 2-3). He also alleges that Defendants made inappropriate statements during the incident.[8]

The video then shows officers bent over and apparently restraining Plaintiff's wrists (Dkt. 75, at 1:40). Defendants state that Mobley continued to resist. Dkt. 66, at 3. The officers then stand up, and Laday begins the video narration (Dkt. 75, at 2:45). Mobley's upper body is not clearly visible in the video until approximately a minute later, when he is cuffed, lying on the floor, with blood next to him on the floor and on the wall (*id*. at 3:40). Mobley then sits up on the cell floor, with wounds visible on the top of his head and at his right temple. *See* Dkt. 95, at 3 (referring to "chunk of flesh hanging at the side of my head").

---

[7]     *See* Dkt. 58, at 1 (asserting that Defendants punched him five times while he was unconscious); Dkt. 58-1 at 15 (Bates 693) (asserting that the video "clearly shows [Plaintiff] was <u>out</u> unconscious and <u>not</u> resisting or attempting any further assault"); Dkt. 95, at 4 (asserting that the video shows Davis punching him five times in the face and shows Grimes hitting him three times with the baton when Plaintiff "was clearly unconscious and <u>could not</u> be resisting!").

[8]     Dkt. 58-1, at 5 (Bates 683) (alleging Laday stated "get him!" after Mobley punched Davis); Dkt. 57, at 3 (alleging an officer said, "spray his ass").

TDCJ investigated the incident the same day and took witness statements, which are contained in the Use of Force Report. The supervisor's summary narrative, dated August 1, 2017, states that Defendant Hunter "pinned" Mobley against the wall but Mobley continued to resist hand restraints (Dkt. 67-1, at 22 (Bates 700)). It further states that, when Defendant Davis attempted to restrain Plaintiff's arms, Plaintiff tried to pull Davis down on the ground with him (*id.*). Officers then used punches and the riot baton to subdue Mobley:

> As Lt. Davis was attempting to grab his arms to restrain him, while on the ground Offender Mobley grabbed Lt. Davis left arm and jacket and would not let go and was attempting to pull Lt. Davis down towards him still attempting to assault Lt. Davis with his right fist. While Offender Mobley was kicking and trying to swing at Lt. Davis, Lt. Davis struck the offender several times in the facial area with a closed right fist to get him to release him to no avail. Officer Grimes struck the offender with the riot baton on his right clavicle several times also in an attempt to stop the assault from Offender Mobley. The offender was subdued by the correctional staff of Officer Hunter, Officer Grimes, Officer Razack Yessoufou CO-II and Lt. Davis. The hand restraints were applied by Lt. Davis onto the offender's wrists and Officer Yessoufou double locked them. Lt. Davis instructed Sgt. Ramirez to narrate the Use of Force on camera.

(*id.*). This summary narrative is based on, and consistent with, statements from the officers who were involved.[9] All inmate witnesses, including Mobley, declined to make

---

[9] *See id.* at 25-27 (Bates 703-05) (statement from Davis states that Hunter "pinned the offender on the wall causing Offender Mobley to hit the wall with his head" and that, after Mobley was on the ground and attempting to pull him down, Davis struck him in the face with a closed fist and Grimes struck him with a riot baton); *id.* at 28-30 (Bates 706-08) (statement from Grimes states that Plaintiff was on the ground pulling and swinging at Davis and that Grimes used riot baton to subdue him); *id.* at 31-33 (Bates 709-711) (statement from Hunter states that Hunter "shoved" Mobley to the back of the cell and caused him to hit the ground, smearing blood on the cell wall, and that Mobley would not release Davis' arm until Davis struck him in the face and Grimes struck him with a riot baton); *id.* at 34-36 (712-14) (statement from Jackson); *id.* at 37-39 (Bates 715-17) (statement from Yessoufou); *id.* at 41-42 (Bates 719-20)

a statement for the investigation.[10]   Plaintiff argues that the "Offender Group Refusal" forms contained in the report are invalid because they were signed by Davis and Oliver, both of whom were present for the use of force.[11]

The video recording continues for more than twenty minutes after Mobley was cuffed in his cell, although Defendants did not use additional force.   In the hallway as officers transported him to a different cell, Mobley whipped his head, apparently to fling blood from his head wound onto the officers (Dkt 75, at 6:09).[12]   The officers then seated Mobley in a wheelchair for transport.   *See* Dkt. 67-1, at 22 (Bates 700) (Use of Force Report narrative states that Defendants Jackson and Davis pushed Mobley backwards and pulled on his shirt to seat him in the wheelchair).   In the new cell, Mobley was able to remove his hand restraints, which he states were loose (Dkt. 95, at 3), and tapped the cell

---

(statement from Oliver); *id*. at 43-44 (Bates 721-22) (statement from Laday).

[10]      *See id.* at 51-52 (Bates 729-30) (Offender Group Refusal forms signed by Davis and Oliver list inmates Crawford, Hatter, Engbrock, and Mobley as witnesses who declined to give a statement); *id*. at 40 (Bates 718) (Mobley refused to sign witness statement on the day of the incident).

[11]      Plaintiff argues strenuously that the Offender Group Refusal forms were clearly "falsified" and "fabricated" because they were signed by Davis and Oliver.  *See, e.g.*, Dkt. 68, at 1-2; Dkt. 70, at 2.  Plaintiff apparently bases his argument on the fact that, some weeks after the incident, TDCJ officials reviewing the Use of Force Report asked the warden to have a different officer complete the form because Davis had been a participant.  *See* Dkt. 67-1, at 74 (Bates 752) (requesting that the warden have a different officer complete the form and resubmit before October 18, 2017).   On this basis, Plaintiff has filed a motion to take testimony of inmate witnesses (Dkt. 68).

[12]      *See* Dkt. 66, at 3 (alleging that Mobley "assaults" officers again by "slinging skin and blood from the wound on his head"); Dkt. 67-1, at 22 (Bates 700) (supervisor's narrative states that Mobley was escorted out of his cell and attempted to assault Officer Yessoufou by shaking his head to sling blood).

window with them, speaking aggressively (Dkt. 75, at 9:25-9:30).[13]

Approximately ten minutes later, after Mobley submitted to reapplication of the hand restraints, medical personnel entered the cell. The Use of Force Report states that Mobley had a 3/4-inch scrape on his right shin and a one-inch superficial cut to the right side of his head (Dkt. 67-1, at 23 (Bates 701); *id.*, at 64-64 (Bates 741-42)). Later that same day, he would receive three stitches to his head.[14] The remainder of the video footage shows medical personnel cleaning and treating Mobley's injuries while Mobley continued to talk about the incident, claiming that it could have been avoided, talking about reviewing the videotape, requesting the names of everyone involved, and stating he intended to file a future lawsuit (Dkt. 75, at VTS_01_2).

On August 14, 2017, after reviewing the investigative records from the incident, Major Angela Chevalier concluded that TDCJ officials did not comply with TDCJ policies and procedures during the incident (Dkt. 67-1, at 3-6 (Bates 681-84)). Chevalier issued a Letter of Instruction to Lieutenant Davis explaining several procedural violations, including his failure to leave the area once he was relieved to prevent further aggression from Mobley (*id.* at 11 (Bates 689)). She also referenced Davis' failure to

---

[13]    *See* Dkt. 67-1, at 22-23 (Bates 700-01) (Use of Force Report narrative states that Mobley was able to defeat restraints and refused Defendant Laday's orders to surrender them, but later relinquished the restraints, which were reapplied behind his back).

[14]    At 3:11 p.m. on the day of the incident, a nurse provided Mobley additional treatment, including stitches. *See* Dkt. 66-1, at 172-74 (Bates 272-74). The records note a "right lower leg laceration superficial with no bleeding," a "[r]ight lateral head laceration with small bloody drainage, at dermis/epidermis level," and a "[m]id top aspect of head with superficial laceration no drainage noted" (*id.* at 174 (Bates 274)). The nurse cleaned Mobley's lacerations with antiseptic betadine and saline, applied three sutures to the right lateral head laceration, and applied Dermabond to his right leg laceration (*id.*).

provide officers with proper instructions about having Mobley face the back wall and kneel for removal of leg restraints (*id*.). Chevalier corrected Sergeant Laday for her failure to ensure that participants were relieved and that officers conducted a proper strip search, as well as for her failure to properly narrate the second video, to take proper photos of Mobley, and to ask Mobley whether he had received injuries (*id*. at 4 (Bates 682)). She corrected Officer Oliver for failing to keep Mobley in full head to toe view while operating the camera (*id*.). She found Officer Grimes' actions to be appropriate (*id*. at 14 (Bates 692)). Defendants' procedural violations were addressed at their unit (*id*. at 3 (Bates 681)), and both Davis and Laday received re-training on TDCJ's Use of Force policy (*id*. at 24 (Bates 702)). No employee was disciplined in connection with the incident (*id*. at 3-4 (Bates 681-82)).

Despite the noted policy violations, Chevalier's report also concluded that the use of force against Mobley was justified because Mobley had struck Davis in the mouth with a closed fist (*id*. at 3 (Bates 681)). Upon reviewing the report, the senior warden stated, "In all, Offender Mobley provoked the incident and employees reacted to gain compliance and maintain control and order" (*id*. at 4 (Bates 682)). An investigator from OIG reviewed the video from the incident, "did not observe anything that he would consider excessive," and determined the force to be "justified and necessary" (*id*.; *see id*. at 6 (Bates 684)). The incident was not referred to OIG for formal review (*id*. at 19 (Bates 697)).

## II.   STANDARDS OF REVIEW

### A.   The PLRA and *Pro Se* Pleadings

Because the plaintiff is an inmate proceeding *in forma pauperis*, the Court is required by the Prison Litigation Reform Act ("PLRA") to scrutinize the claims and dismiss the complaint at any time, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B); *see also* 42 U.S.C. § 1997e(c) (providing that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief"). A claim is frivolous if it lacks any arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (internal quotation marks and citation omitted). "A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Id.* (internal quotation marks and citation omitted).

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

### B.     Summary Judgment—Rule 56

Defendants have moved for summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id.* "An issue is 'genuine' if the evidence is sufficient for a

reasonable jury to return a verdict for the nonmoving party." *Id.* The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (internal citation, alteration and quotation marks omitted); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

Although Plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence

in the summary judgment record in order to place that evidence properly before the court. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require *pro se* parties to fundamentally abide by the rules that govern the federal courts. *Pro se* litigants must properly . . . present summary judgment evidence") (internal citation and quotation marks omitted).

## III.  <u>ANALYSIS</u>

Plaintiff alleges that Defendants used excessive force against him, or failed to intervene to prevent the use of excessive force, in violation of the Eighth Amendment. Section 1983, 42 U.S.C. § 1983, provides a vehicle for a claim against a person "acting under color of state law," such as a prison official, for a constitutional violation. *See Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016); *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).

All five Defendants who have been served with process have moved for summary judgment. *See* Dkt. 66 (motion for summary judgment filed by Davis, Grimes, and Laday); Dkt. 73 (motion for summary judgment by Hunter adopting arguments in Dkt. 66); Dkt. 81 (motion for summary judgment by Oliver adopting arguments in Dkt. 66). Defendant Jackson has not been served with process.[15]

---

[15] Plaintiff has filed a motion for default judgment against Jackson (Dkt. 82), invoking Federal Rule of Civil Procedure 55, and a motion for a summons directed to defendants Hunter and Jackson (Dkt. 76). Because the Court did not order Jackson to answer Plaintiff's complaint and Jackson has not been served with process, Plaintiff's request for default judgment will be denied. Moreover, for the reasons stated below, the Court determines that Plaintiff's claims against Jackson should be dismissed under 28 U.S.C. § 1915 without service of process.

## A.     Official Immunity

A claim against a TDCJ or UTMB official in his or her official capacity is a claim against TDCJ or UTMB, and thus a claim against the State of Texas.  *See Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604 (5th Cir. 2008).  Because the Eleventh Amendment protects the states' sovereign immunity, federal courts lack jurisdiction over suits against a state for money damages unless the state has waived its immunity or Congress has clearly abrogated that immunity.  *NiGen Biotech, L.L.C., v. Paxton*, 804 F.3d 389, 393–94 (5th Cir. 2015); *Moore v. La. Bd. Of Elem. And Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014).  Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when enacting Section 1983.  *NiGen*, 804 F.3d at 394.

To the extent Plaintiff brings any claims for money damages against Defendants in their official capacities, the state is immune under the Eleventh Amendment.  The claims therefore will be dismissed for lack of jurisdiction.

## B.     Qualified Immunity

Defendants have invoked qualified immunity.  Plaintiff bears the burden to negate the defense.  *See Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017).  Determination of qualified immunity requires a bifurcated analysis: first, the court must decide "whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right"; and second, the

---

Plaintiff's motion for a summons is moot as to Hunter because Hunter has appeared and filed a motion for summary judgment.

court must determine "whether the defendant's conduct was objectively reasonable in light of clearly established law." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (internal quotation marks and citation omitted); *see Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Pratt*, 822 F.3d at 181 (internal citation and quotation marks omitted). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Hanks*, 853 F.3d at 744 (internal citations and quotation marks omitted). "Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are all insufficient to overcome [qualified] immunity." *See Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016) (citation and internal quotation marks omitted).

A reviewing court may address the two prongs of the qualified immunity analysis in any sequence, depending on the circumstances of the case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017). Given the circumstances of this case, the Court proceeds to analyze the merits of his constitutional claims.

### C. Eighth Amendment Claims

Plaintiff opposes summary judgment and argues that he was subject to a "provoked malicious/sadistic unnecessary/excessive" use of force (Dkt. 70, at 1). He alleges that Defendants Davis, Grimes, Hunter and Jackson, "under guise of maintaining

order," used force solely to hurt, harm, punish, and humiliate him (*id*.). He also alleges that Defendants Laday and Oliver failed to intervene to prevent the use of excessive force.

### 1. Excessive Force (Davis, Grimes, Hunter, and Jackson)

When a prisoner claims that a prison official used excessive force in violation of the Eighth Amendment's ban on cruel and unusual punishments, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312 (1986)). "[Not] every malevolent touch by a prison guard gives rise to a federal cause of action." *Id*. at 9. The Eighth Amendment prohibition "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id*. at 9-10 (internal citations and quotation marks omitted). *Hudson*, applying *Whitley*, identified five factors relevant to the Court's analysis: (1) the extent of injury suffered by the inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and, (5) any efforts made to temper the severity of a forceful response. *Id*. at 7; *Cowart v. Erwin*, 837 F.3d 444, 452-53 (5th Cir. 2016). Regarding injury to the inmate, the Court stated, "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." *Hudson*, 503 U.S. at 7. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately

counts." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

In this case, Plaintiff was injured by Defendant's use of force, suffering a head lacerations requiring three stitches and a laceration to his lower leg. These injuries are relevant under *Hudson*. However, the summary judgment evidence in the record, including the investigative records and the video evidence, supports Defendants' position that the use of force against Mobley was applied in a good faith effort to maintain or restore discipline. Both Plaintiff and Defendants urge the Court to rely on the video evidence, which the Supreme Court has held is appropriate on summary judgment.[16]

Defendants argue that force was necessary and that they reasonably perceived a threat, *see Hudson*, 503 U.S. at 7, because Mobley attempted to prevent his cell door from closing, refused orders, and punched Davis. By Plaintiff's own description of events, he was "combative" and "punched Davis in the mouth" (Dkt. 95, at 2). The video recording corroborates the parties' accounts. After Mobley punched Davis, several officers entered the cell to restrain him, and Defendants present evidence that Mobley continued to resist as they attempted to apply hand restraints. Mobley does not specifically dispute that he resisted hand restraints, nor that he tried to pull Davis down to the floor as officers attempted to subdue him. The evidence in the summary judgment record shows that Davis struck Plaintiff's face several times with his fist and, when Mobley did not release his hands, Grimes applied several blows to Plaintiff's clavicle

---

[16] *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape").

with a riot baton.[17]   Given the uncontroverted evidence that Plaintiff punched Davis and resisted restraints, Plaintiff does not demonstrate a genuine issue of material fact as to whether the use of force was necessary under these circumstances.   The law clearly recognizes that institutional security and restoration of order are legitimate reason for officers to use force.   *Hudson*, 503 U.S. at 6 ("prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security") (internal citation, quotation marks, and alterations omitted).

   *Hudson* also instructs the Court to consider the amount of force needed and whether Defendants tempered its severity.   In this case, the entire use of force incident was less than thirty seconds long.   After Mobley's hands were restrained, no additional force was used.   Mobley asserts that the amount of force was excessive because he was "clearly" unconscious and could not have been resisting when Davis and Grimes used blows to gain control over his hands.   *See, e.g.*, Dkt. 95, at 4.   However, he cites to no evidence in the Use of Force Report or elsewhere indicating that he lost consciousness. The medical records do not provide support for his statement (Dkt. 67-1, at 63-64 (Bates 741-42); Dkt. 66-1, at 172-74 (Bates 272-74)).[18]   Moreover, despite his filings urging the

---

[17]      The supervisor's narrative in the Use of Force Report, summarizing the officers' statements and other evidence, states that Hunter "pinned" Mobley against the wall but Mobley continued to resist hand restraints, attempting to pull Davis down to the floor with him (Dkt. 67-1, at 22 (Bates 700)).   The video evidence does not show these events but is not inconsistent with the report's narrative.   Plaintiff declined to make a statement for investigators (*id.* at 40 (Bates 718)).

[18]      Plaintiff asserts that Defendants' records do not fully document his injuries (Dkt. 58, at

Court to rely on the video evidence to establish that he was unconscious, Mobley's body is not visible in the video at the time Defendants applied force. The video captures officials instructing Plaintiff to give them his hands and to stop resisting, thus generally corroborating Defendants' account, and does not contradict any material statement by Defendants. *See Scott*, 550 U.S. at 380-81. Given this evidence, Plaintiff's conclusory assertions that he was unconscious and that Defendants used force excessive to the need are insufficient to prevent summary judgment. *See Jones*, 678 F.3d at 348; *Outley*, 840 F.3d at 217.

To the extent Plaintiff bases his Eighth Amendment claim on Defendants' violation of TDCJ policy, his claim fails. Plaintiff argues that the Court should not rely on the Use of Force Report because it contains the inmate's group refusal forms, which initially were flawed because they were signed by officers who participated in the incident.[19] He also refers to the policy violations identified by Major Chevalier in the Use of Force Report.[20] However, a policy violation in itself is insufficient to show a constitutional violation. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) ("a prison

---

2), but does not identify any injury that is missing from the records. He also asserts that the officers' witness statements are inconsistent with each other and with other documents in the Use of Force Report (Dkt. 58, at 2). However, he does not identify any material inconsistencies.

[19] Although Plaintiff asserts that he should now be permitted to call three inmate witnesses to question them about the group refusal in the report, he does not describe what the witnesses would say, and apparently does not know. *See* Dkt. 70, at 2 (requesting their testimony to see "what if anything" the inmates witnessed).

[20] Plaintiff asserts that Defendants violated policy because Davis could have avoided using force by simply closing the cell door, *see* Dkt. 58-1, at 4 (Bates 682); *id*. at 6 (Bates 684)), and because Davis failed to remove himself after Plaintiff punched him (*see id*. at 11 (Bates 689)).

official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met"); *see Kitt v. Bailey*, 676 F. App'x 350, 352 (5th Cir. 2017).

For the reasons stated above, Plaintiff has failed to demonstrate a genuine issue of material fact that Defendants Davis and Grimes acted maliciously and sadistically, rather than in a "good-faith effort to maintain or restore discipline." *See Hudson*, 503 U.S. at 7. Because Plaintiff has not shown that his constitutional rights were violated, Davis and Grimes are entitled to qualified immunity. *Carroll*, 800 F.3d at 169. Summary judgment therefore will be granted to Defendants Davis and Grimes.

The Court also dismisses Plaintiff's claim that Jackson used excessive force against him. Because Jackson has not been served with process and therefore has not answered or moved for summary judgment, the Court examines whether these claims are appropriately dismissed under 28 U.S.C. § 1915(e)(2)(B). Jackson was present during the use of force and apparently escorted Plaintiff to the second cell, but Plaintiff's pleadings and briefing make no specific allegations that could support a claim that Jackson applied force against Mobley "maliciously and sadistically to cause harm," or other allegations relevant to the *Hudson* factors cited above. *See Hudson*, 503 U.S. at 7.[21] Given Plaintiff's failure to plead specific facts against Jackson, as well as the

---

[21]    The Use of Force Report mentions Jackson only briefly and contains a statement from Jackson. Dkt. 67-1, at 22 (Bates 700) (report states that, while officers were escorting Mobley to a second cell after the use of force, Mobley shook his head to sling blood from his injury and Jackson then pushed Plaintiff backwards into a wheelchair for transport); *id.* at 34-36 (Bates 712-14) (Jackson's statement avers that he did not touch Mobley during the use of force but that, after the incident, he "pushed [Mobley] backwards and Lt. Davis grabbed his shirt and the offender was seated in a wheelchair").

administrative and medical records which provide no support for an Eighth Amendment claim against him, Plaintiff's conclusory allegations are insufficient to state a non-frivolous claim for relief. *See* 28 U.S.C. § 1915(e)(2)(B); *Iqbal*, 556 U.S. at 678. Plaintiff's Eighth Amendment claim against Jackson will be dismissed as frivolous and for failure to state a claim upon which relief may be granted. *See Samford,* 562 F.3d at 678; *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).

### 2. Failure to Protect (Laday and Oliver)

Plaintiff claims that Defendants Laday and Oliver violated his Eighth Amendment rights. Laday and Oliver were present at the use of force incident but Plaintiff does not allege that they used force against him. Laday has filed a summary judgment motion (Dkt. 66), which Oliver joins (Dkt. 81).

Bystander liability requires a showing that an officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Kitchen v. Dallas Cty., Tex.*, 759 F.3d 468, 480 (5th Cir. 2014) (internal quotation marks and footnote omitted), *abrogated on other grounds*, *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015). Bystander liability attaches in Eighth Amendment excessive force cases. *Id.* (citing *Davis v. Cannon,* 91 F. App'x 327, 329 (5th Cir.2004)). However, it arises "only where the plaintiff can allege and prove 'another officer's use of excessive force.'" *Id.* at 481 (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).

As held above, Plaintiff has failed to demonstrate a genuine issue of material fact

regarding whether Davis, Grimes, and Hunter subjected him to excessive force on August 1, 2017. His claims of bystander liability for Laday and Oliver therefore necessarily fail as well. *See id.*

To the extent Plaintiff brings a failure to protect claim against either Laday or Oliver, his claim also fails. A failure to protect claim requires a showing that an inmate was "incarcerated under conditions posing a substantial risk of serious harm" and that officials were "deliberately indifferent to his need for protection." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)) (discussing failure-to-protect claim in context of inmate-on-inmate violence); *see Brooks v. Kelly*, 736 F. App'x 497, 497-498 (5th Cir. 2018) (discussing failure-to-protect claim in context of use of force by prison officials). Plaintiff does not allege that Laday or Oliver personally used force against him, and has failed to demonstrate a genuine issue of material fact as to his Eighth Amendment claims against the Defendants who administered the force at issue. He thus alleges no specific facts regarding Laday or Oliver that would support a finding of deliberate indifference. *See Neals*, 59 F.3d at 533. Summary judgment is granted for Laday and Oliver.

## IV.  CONCLUSION

For the reasons stated above, the Court **ORDERS** as follows:

1.  The motion for summary judgment (Dkt. 49) filed by Davis and Laday is **DENIED as moot** because it was superseded by Defendants' subsequent motion.

2.     The motion for summary judgment (Dkt. 66) filed by Davis, Laday, and Grimes is **GRANTED**.

3.     The motion for summary judgment (Dkt. 73) filed by Hunter is **GRANTED**.

4.     The motion for summary judgment (Dkt. 81) filed by Oliver is **GRANTED**.

5.     Plaintiff's motion for entry of default against Jackson (Dkt. 82) is **DENIED**.   Plaintiff's claims against Jackson are **DISMISSED with prejudice** under 28 U.S.C. § 1915(e)(2)(B) as frivolous and for failure to state a claim upon which relief may be granted.

6.     All of Plaintiff's claims are **DISMISSED with prejudice**.

7.     All other pending motions or requests for relief not specifically ruled on in this Memorandum are **DENIED as moot**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Galveston, Texas, this 24th day of July, 2019.

George C. Hanks Jr.
United States District Judge